UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHERRY R., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-01116-TAB-TWP |
| | ) | |
| ANDREW M. SAUL Acting Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON PLAINTIFF'S REQUEST FOR JUDICIAL REVIEW**

**I.   Introduction**

Plaintiff brings this action for judicial review challenging the Administrative Law Judge's final decision denying her Supplemental Security Income. Plaintiff contends generally that the ALJ impermissibly played doctor when instead he should have summoned a medical expert. The Commissioner defends the ALJ's decision largely on the ground that there was no need to summon a medical expert because no medical source opined that Plaintiff had any functional limitations. The Commissioner also points out that Plaintiff was represented by counsel at the hearing, so presumably her counsel could have contemporaneously addressed the need to supplement the record.

As discussed below, it is significant that at the time of the January 15, 2019, hearing, the ALJ gave no weight to the state agency consultants. The ALJ did so because those consultants issued their opinions prior to a substantial amount of additional medical evidence being available at the time of the hearing. Unfortunately, rather than summoning a medical expert to evaluate this voluminous, additional medical evidence, the ALJ took it upon himself to do so. This was error, and remand is appropriate.

**II.     Background**

Plaintiff applied for SSI on April 6, 2017, alleging a disability onset date of February 13, 2016. [Filing No. 15-2, at ECF p. 25.] The Disability Determination Bureau denied Plaintiff's application initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on January 15, 2019. [Filing No. 15-2, at ECF p. 26.] Counsel represented Plaintiff at the hearing. [Filing No. 15-2, at ECF p. 26, 45.] On January 29, 2019, the ALJ denied Plaintiff's claim, and the Appeals Council denied review. Plaintiff then filed her complaint seeking judicial review in this Court. [Filing No. 22.]

The parties' briefs are largely in agreement as to Plaintiff's extensive medical history, so the Court will not restate all that history here. Instead, the Court highlights some of Plaintiff's most significant history as it relates to judicial review.

At the time of her filing date, Plaintiff was 44 years old. Plaintiff had at least a high school education and past relevant work as a bench press operator. [Filing No. 15-2, at ECF p. 38.] On April 26, 2016, Plaintiff presented to the Hope Family Care Center for an evaluation of her depression. She was recommended to continue taking her prescribed medication and follow up in three months if needed. [Filing No. 15-7, at ECF p. 56.] On July 25, 2016, Plaintiff presented to Dr. Lissa Bledsoe at Riverview Health Physicians. She complained of depression and not being able to work due to her health issues. She further complained of issues with extended standing. [Filing No. 15-7. at 10-17.]

On February 27, 2017, Plaintiff saw neurologist Dr. Mark Janicki at Indiana Neuroscience Associates with a complaint of foot pain that she said was "red hot" and intensifies and comes on quicker when she walks. [Filing No. 15-7, at ECF p. 24.] Dr. Janicki ordered an EMG for Plaintiff's bilateral lower extremities. [Filing No. 15-7, at ECF p. 25.] Dr. Janicki

reported that the March 6, 2017, EMG was abnormal and concluded that Plaintiff probably has generalized polyneuropathy. [Filing No. 15-7, at ECF p. 26.]

On May 16, 2017, Plaintiff visited Aspire Indiana for treatment for major depressive disorder, generalized anxiety disorder, and borderline personality disorder. Between May 16, 2017, and May 9, 2018, Plaintiff attended 41 sessions, including both group therapy and individual therapy sessions. She had a noted improvement in her mood but still struggled to regulate emotions. [Filing No. 15-8, at ECF p. 55, 59.]

Plaintiff underwent a disability examination with Dr. Daniela Djodjeva on July 31, 2017. She complained of an unsteady gait and reported that she felt like falling due to her neuropathy and parathesis. She also reported a tingling and burning sensation in both feet and said she cannot do tasks standing up, as standing aggravates her symptoms. Dr. Djodjeva diagnosed Plaintiff with type two diabetes, high blood pressure, hypothyroidism, bilateral knee pain, chronic back pain, degenerative disc disease, peripheral neuropathy, dizziness, morbid obesity, and possible sleep apnea. [Filing No. 15-10, at ECF p. 214-16.] State agency consulting physician Shayne Small, M.D., reviewed Dr. Djodjeva's report and Plaintiff's updated treatment records in August 2017. Dr. Small opined that Plaintiff had no severe physical impairment. [Filing No. 15-3, at ECF p. 18-28.]

Plaintiff reported to JWM Neurology on July 23, 2018, to see Dr. Michael Sermersheim for complaints of sciatica, left-sided pain, balance problems, and vertigo. Plaintiff described her symptoms as a swimming or spinning sensation that comes on suddenly and then gradually resolves, and she also complained of shooting pains in her legs and tingling and burning in her feet and lower legs. [Filing No. 15-10, at ECF p. 26.] Dr. Sermersheim recommended she undergo a brain MRI and return if her symptoms persisted or worsened. An August 2018 brain

MRI was normal. [Filing No. 15-10, at ECF p. 30.] Plaintiff returned to JWM Neurology on August 17, 2018, for balance testing due to her dizziness, vertigo, and headaches. [Filing No. 15-10, at ECF p. 31.] Her test results showed abnormal tracking that may suggest mild central abnormality and a positive Dix-Hallpike maneuver indicating benign paroxysmal positional vertigo ("BPPV") involving the right posterior semicircular canal, which suggested a peripheral etiology for Plaintiff's symptoms. She was recommended to consider Vestibular Rehabilitation if her symptoms persisted. [Filing No. 15-10, at ECF p. 31.]

At the January 15, 2019, hearing before the ALJ, Plaintiff testified that she is unable to work due to her inability to stand for long periods of time. [Filing No. 15-2, at ECF p. 53.] She further testified that she had difficulty walking or climbing stairs for extended periods of time due to her pain, and that she could not sit for an extended period before she had to get up and stretch due to pain in her back. Plaintiff said she was able to do chores and shopping, but only for 10 to 15 minutes at a time. She testified she had panic attacks and feelings of depression that would prohibit her from working, even if she could be seated the entire day. [Filing No. 15-2, at ECF p. 52-60.]

### III.     ALJ's Findings and Conclusions

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2016, and that she had not engaged in substantial gainful activity since her February 13, 2016, onset date. The ALJ further found that Plaintiff had the following severe impairments: calcaneal spurs; osteoarthritis; degenerative disc disease; asthma; obstructive sleep apnea; anemia; non-insulin dependent diabetes mellitus with polyneuropathy; hypothyroidism; obesity; depression; anxiety; and a borderline personality disorder. [Filing No. 15-2, at ECF p. 28.]

Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [Filing No. 15-2, at ECF p. 29.] The ALJ then concluded that Plaintiff has the residual functional capacity to perform a range of sedentary work as follows:

> sitting up to sixty minutes at one time and six hours during an eight-hour workday; standing and walking up to fifteen minutes at one time two hours during an eight-hour workday; lifting, carrying, pushing, and pulling ten pounds occasionally and ten pounds frequently; occasionally climbing ramps and stairs, stooping, kneeling, crouching, and crawling; no climbing ladders, ropes, or scaffolds; no work around dangerous moving machinery or at unprotected heights; frequent fingering and handling bilaterally; no exposure to extreme heat or extreme cold; occasional exposure to humidity, dusts, gases, chemicals, and other respiratory irritants; simple routine tasks with the ability to sustain the attention and concentration necessary to carry out work-like tasks with reasonable pace and persistence occasional interaction with the public, coworkers, and supervisors; and the use of a cane for walking since October 17, 2018.

[Filing No. 15-2, at ECF p. 33.]

## IV. Discussion

The crux of Plaintiff's argument hinges upon the ALJ's repudiation of the state agency consultants' opinions as unreliable in light of the significant amount of medical evidence that was not available to the consultants. Given the importance of the ALJ's findings in this regard, the Court quotes the ALJ at length:

> As for medical opinions and prior administrative medical finding, I will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding or medical opinion, including those from your medical sources. I fully considered the medical opinions and prior administrative medical findings in this case. The opinions from the state agency medical and psychological consultants on initial determination and reconsideration are generally unpersuasive. The state agency consultants determined that the claimant has no "severe" medically determinable physical or mental impairments. (See Ex. 1A; 2A; 5A; and 6A). As a threshold matter, these opinions were issued prior to the receipt of a substantial amount of medical evidence at the hearing level, such that by at the time of the hearing, the state agency opinions were no longer consistent with the overall medical evidence. Additionally, the state agency

5

>opinions are not supported by the medical evidence that was of record at the time of the reconsideration determination, which show more than minimal limitations resulting from diabetes mellitus, neuropathy, and obesity.

[Filing No. 15-2, at ECF p. 37.]

Seizing on this passage, Plaintiff argues that the ALJ committed reversible error in failing to consult a medical expert to review and consider the "substantial amount of medical evidence at the hearing level." [Filing No. 22, at ECF p. 10.] Plaintiff contends that without any medical expert opinion to consider, the ALJ impermissibly played doctor by interpreting the medical records and producing resultant functional capacity limitations on his own. The Court agrees.

As a preliminary matter, as Plaintiff argues, there is evidence to suggest that Dr. Corcoran (and thus Dr. Small, in affirming) misinterpreted a neurologist's interpretation of an EMG. [Filing No. 22, at p. 12.] More important, however, is that there is material objective medical evidence that was not available at the time of the initial and reconsideration reviews. For example, since the August 1, 2017, reconsideration assessment, Plaintiff has had x-rays of her knees indicating bone-on-bone osteoarthritis and balance testing that indicated BBPV. She has had more treatment for her conditions, in that she has received Lidocaine and Synvisc injections in her knees, and she was changed from standard orthotics to diabetic extra-depth shoes. Moreover, she has continued in primary care and had specialized care for her knees, feet, and neurological issues. [Filing No. 15-7, at ECF p. 146; Filing No. 15-8, at ECF p. 131-34; Filing No. 15-10, at ECF p. 31.] As Plaintiff correctly argues, no medical expert assessed this evidence by the time of the hearing, and the ALJ did not seek such medical expert review.

Plaintiff relies in relevant part on *Goins v. Colvin*, 764 F.3d 677 (7th Cir. 2014). In *Goins*, while the claimant's application for SSI was pending, she sought new treatment for her back problem and obtained an MRI. *Id*. at 679. Although, the consulting physicians in that case had not been shown the report of the results of that MRI, the ALJ accepted the consulting

physicians' conclusions. *Id.* at 679-80. Writing for a unanimous panel, Judge Posner reversed the district court and remanded the case to the Social Security Administration for further consideration. Judge Posner found it fatal that the consulting physicians had not been shown an MRI. *Id*. at 680. This "new and decisive medical evidence" undermined the reasoning of the second consulting physician, and Judge Posner faulted the ALJ for "playing doctor." *Id. See also McHenry v. Berryhill,* 911 F.3d 866, 871 (7th Cir. 2018) ("An ALJ may not conclude, without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about her impairments.").

      The Commissioner faults Plaintiff for complaining that the ALJ should not have assessed an RFC without a medical opinion on which to base it. [Filing No. 27, at ECF p. 17.] The Commissioner then relies on the fact that Plaintiff was represented by counsel at her hearing and neither submitted her own opinion evidence nor requested that the ALJ obtain additional opinion evidence. Nor did she object to the completeness of the record. Relying on *Harris v. Saul,* 835 F. App'x 881, 885 (7th Cir. Dec. 3, 2020), the Commissioner argues that Plaintiff's appellate counsel offers no explanation as to why Plaintiff's representative at the hearing did not request medical expert review. [Filing No. 30, at ECF p. 4.] Appellate counsel offers only speculation in response. [Filing No. 30, at ECF p. 4.] While this speculation is not helpful, in the end it is unnecessary. Any presumption that a represented claimant made their best case before the ALJ does not overcome the ALJ's obligation to obtain medical expert interpretations of the record. The nonprecedential *Harris* decision on which the Commissioner relies does not mandate a different outcome. Unlike here, in *Harris* the claimant's counsel wrote to the ALJ that the record was complete and stated at the hearing that he had no objection. *Id.* The issue in the case before the Court is not a matter of completeness of the record, but rather a matter of interpretation of

that record.  The ALJ had a duty to obtain such medical opinions needed to interpret the evidence and failed to do so.  *See, e.g.*, *McHenry*, 911 F.3d at 871 ("In this case, the ALJ alone compared the test results with earlier treatment records to determine if McHenry's back impairment in April 2014 existed at the same level of severity during the relevant period. . . .  [T]he ALJ was not qualified to assess on his own how the April 2014 MRI results related to other evidence in the record.").

There is ample reason to suggest that the ALJ's failure to summon a medical expert could have significantly harmed Plaintiff.  Vertigo and bone-on-bone osteoarthritis are both new findings evidenced by objective medical testing, and both could add significant limitations to an individual's residual functional capacity.  In this regard, Plaintiff argues:

> Had this new testing been subjected to expert scrutiny, it is almost certain the limitations would be greater than those provided by the state agency consultants who determined that there were no severe medical impairments.  The ALJ recognized that the consultants' opinions were outdated, but rather than attempting to rectify the situation, he made it worse by weighing the most complex medical evidence himself without any expert opinion.

[Filing No. 22, at ECF p. 13.]  The Court agrees, and this conclusion is supported by Seventh Circuit precedent.  *See Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) (ALJ reached conclusions regarding mental retardation that were unsupported by evidence in the record and "seems to have succumbed to the temptation to play doctor"); *Herron v. Shalala*, 19 F.3d 329, 334 (7th Cir. 1994) (ALJ may not make independent medical conclusion that air conditioning would improve a claimant's lung disorder by eliminating pollutants); *Rohan v. Chater*, 98 F.3d 966, 970-71 (7th Cir. 1996) (ALJ may not make independent medical findings regarding whether certain activities are inconsistent with a particular medical diagnosis)).  The lack of any medical source opinion that Plaintiff had any functional limitations may prove to be a significant hurdle to Plaintiff's success.  However, the Court will not make this determination on

8

its own, nor should the ALJ have done so. Rather, remand is required to allow the ALJ to summon a medical expert to provide an informed basis for determining whether Plaintiff is disabled.

Remand will also allow the ALJ to summon an expert opinion to assess additional medical evidence regarding Plaintiff's mental health. In this regard, the Court notes that on initial review, state agency psychologist Joelle J. Larsen, PhD, concluded on May 5, 2017, that there were no medically determinable psychological impairments. [Filing No. 15-3, at ECF p. 12.] On reconsideration, state agency psychologist William A. Shipley, PhD, stated on July 14, 2017, that there was "no alleged worsening of any mental impairments," and affirmed Dr. Larsen's assessment. [Filing No. 15-3, at ECF p. 36.] The difficulty here is that Plaintiff started her care at Aspire Indiana on May 16, 2017, which continued through May 9, 2018. Thus, the bulk of Plaintiff's mental health records were not available for the state agency psychologists. This conclusion is confirmed by the list of Evidence of Record considered on reconsideration, which indicates that no records from Aspire had yet been received. [Filing No. 15-3, at ECF p. 30-32.] As a result, no medical expert assessed the mental health treatment records produced between May 2017 and May 2018. This left the ALJ, once again, in the improper role of playing doctor. This new medical evidence could have changed the reviewing physician's opinion, so it was inappropriate for the ALJ to interpret this later evidence without further medical expert opinion. *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)).

Finally, Plaintiff argues that the ALJ further erred when he failed to adequately account for his own findings of moderate limitations of concentration, persistence, and pace in the assigned residual functional capacity and in posing hypothetical questions to the vocational

expert. Given the Court's conclusion that the ALJ must summon a medical expert to evaluate Plaintiff's subsequent mental health records, it is sufficient to note that the ALJ should revisit these findings with the benefit of this medical expert opinion.

## V. Conclusion

The ALJ considered a significant volume of evidence in concluding Plaintiff was not disabled. However, proper consideration of this evidence required the ALJ to enlist assistance from medical experts. The ALJ did not do so, and instead considered and evaluated this potentially important evidence on his own. Perhaps the Commissioner is correct that enlisting medical opinions will not change the outcome. That is a determination, however, for the ALJ to make based upon medical experts' opinions of the voluminous evidence that was not before the state agency consultants. Accordingly, pursuant to sentence four of 42 U.S.C. § 405(g), Plaintiff's request for remand [Filing No. 22] is granted.

Date: 5/11/2021

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email